UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TASHINA ELLIOTT,

    Plaintiff,

v.                                                                                   Case No. 2:15-CV-137

UNITED OF OMAHA LIFE INSURANCE                 HON. GORDON J. QUIST
COMPANY,

    Defendant.
_____/

# OPINION

Plaintiff, Tashina Elliott, has sued Defendant, United of Omaha Life Insurance Company, pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq., seeking review of Defendant's decision to discontinue Plaintiff's long-term disability benefits. (ECF No. 1-1 at PageID.8.) Defendant has filed the Administrative Record and the parties have filed cross-motions for judgment on the Administrative Record in accordance with the procedures set forth in *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609 (6th Cir. 1998). For the foregoing reason, the Court will affirm Defendant's decision.

*Facts*

Defendant issued a long-term disability insurance policy to the Bay Mills Indian Community. Plaintiff is an employee of Bay Mills and is covered by the policy which provides, in relevant part:

> Disability and Disabled means that because of an Injury or Sickness, a significant change in Your mental or physical functional capacity has occurred in which You are:
> (a) prevented from performing at least one of the Material Duties of Your Regular Occupation on a part-time or full-time basis; and
> (b) unable to generate Current Earnings which exceed 80% of Your Basic Monthly Earnings due to that same Injury or Sickness.

> After a Monthly Benefit has been paid for 3 years, Disability and Disabled mean You are unable to perform all of the Material Duties of any Gainful Occupation. Disability is determined relative to Your ability or inability to work. It is not determined by the availability of a suitable position with Your employer.
> …
> Material Duties means the essential tasks, functions, and operations relating to an occupation that cannot be reasonably omitted or modified. In no event will We consider working an average of more than 40 hours per week in itself to be a part of material duties. One of the material duties of Your Regular Occupation is the ability to work for an employer on a full-time basis.
>
> Regular Occupation means the occupation You are routinely performing when Your Disability begins. Your regular occupation is not limited to the specific position You held with the Policyholder, but will instead be considered to be a similar position or activity based on job descriptions included in the most current edition of the U.S. Department of Labor Dictionary of Occupational Titles (DOT). We have the right to substitute or replace the DOT with a service or other information that We determine of comparable purpose, with or without notice. To determine Your regular occupation, We will look at Your occupation as it is normally performed in the national economy, instead of how work tasks are performed for a specific employer, at a specific location, or in a specific area or region.

(ECF No. 13-1 at PageID.90-92.)

Plaintiff worked as a receptionist at Bay Mills. The record describes her occupation as follows:

> ESSENTIAL FUNCTIONS:
> 1. Schedules appointments, gives information to callers, takes dictation, and otherwise relieves accounting department of clerical work and minor administrative and business detail.
> 2. Reads and routes incoming mail.
> 3. Answers telephone and gives information to callers or routes call to appropriate official and places outgoing calls.
> 4, Greets visitors, ascertain nature of business, and conducts visitors to employer or appropriate person.
> 5. May compile and type statistical reports, using word processor or computer terminal.
> 6. Maintains organizational files and records.
> 7. Receipt in payments and custodian of petty cash fund.
> 8. Assists other accounting staff when necessary.
> 9. Performs other miscellaneous work as assigned by the Controller.
> 10. Other duties may be assigned within the scope and complexity of this position's essential functions.
> 11. Must attend all mandatory trainings offered through the Human Resources Department and/or Department Director.

> PHYSICAL REQUIREMENTS
> While performing the duties of this job, the employee is regularly required to sit with occasional walking and standing. Occasionally the employee must bend, squat, crouch, balance, climb height of 2ft, reach above shoulder level, kneel, and push/pull. The employee must occasionally lift and/or move up to 10 pounds. The employee must be able to use both hands for repetitive action such as firm grasping.

(ECF No. 13-3 at PageID.424.)

On March 4, 2014, Plaintiff slipped and fell at work, tearing the medial retinaculum in her left knee. Dr. Woolever performed surgery on her knee to repair the injury on March 11, 2014. (ECF No. 13-1 at PageID.148-49.) Her estimated return to work date was April 22, 2014. (ECF No. 13-3 at PageID.418.) Plaintiff had a number of follow-up appointments with Dr. Woolever, who delayed her return to work date several times. (ECF No. 13-2 at PageID.258-66.)

Defendant paid short-term benefits, and, on July 30, 2014, notified Plaintiff that she would be required to seek long-term benefits for payment to continue past September 4, 2014. (ECF No. 13-3 at PageID.385.) After an appointment on August 13, Dr. Woolever noted that

> [Plaintiff] is doing well. She said she still gets occasional weakness and a feeling of giving out in her left knee when she is ambulating long distances….At this point I will have her continue strengthening her quad and continue to work with physical therapy to reduce any swelling in her knee. I will see her back in 6 weeks to assess her progress. She asked me about work and I think it would be about 3 months before she would be able to return.

(ECF No. 13-2 at PageID.258.)

On October 13, 2014, a vocational consultant performed an occupational analysis and confirmed the sedentary nature of Plaintiff's job. (ECF No. 13-1 at PageID.170-72.) The next day, Defendant denied Plaintiff's claims for long-term benefits. (*Id*. at PageID.163-65.) On November 6, 2014, Dr. Woolever returned Plaintiff to work with limits on running, jumping, and lifting over 10 pounds. (ECF No. 13-1 at PageID.138.)

3

On December 4, Plaintiff saw Dr. Woolever, this time complaining about pain in her right knee, and the doctor noted that "I will keep her out of work at this point in time. I told her; however, if she was to find a sitting job that perhaps she would be able to do this. She understands." (ECF No. 13-1 at PageID.131.) On December 15, 2014, Plaintiff's attorney notified Defendant that Plaintiff would be appealing the denial of her long-term benefits claim. (*Id*. at PageID.159.) On January 19, 2015, Dr. Woolever performed surgery on Plaintiff's right knee, and Plaintiff had a follow-up appointment on January 26, 2015. (*Id*. at PageID.130-33.)

On February 12, 2015, Dr. Woolever and Dr. Thomas Reeder, United's Senior Vice President and Medical Director, spoke on the phone and discussed Plaintiff's condition. That same day, Dr. Reeder sent Dr. Woolever a letter summarizing his understanding of the conversation; Dr. Woolever returned the letter on February 19, 2015 without taking any issue with its contents. The letter indicated that as of August 14, 2014, Plaintiff

> [W]as doing well and reported only occasional weakness and feeling of giving out when she walked long distances. Range of motion was 0-115 degrees and the patella tracked well. The collateral ligaments were stable. And [Woolever] recommended strengthening exercises.

(*Id*. at PageID.117.) Plaintiff had

> [A] seated job. [They] discussed reasonable restrictions and limitations from the fall of 2014. [Woolever] agreed that she could perform constant seated work with the ability to change position, occasionally walk and stand, and occasionally lift and carry 10 pounds. It would be reasonable for her to avoid squatting, kneeling, crawling and climbing.

The letter also stated that, on December 4, 2014, Plaintiff

> [C]omplained of left knee discomfort. The right knee MRI showed subluxation and a tear in the medial retinaculum and a bone cyst in the right femur but you believed this was old and discussed arthroscopy. [Woolever] advised her that if she were to find a sitting job perhaps she would be able to do it.

(*Id*.) As of January 26, 2015, Plaintiff complained of some knee discomfort, but she was ambulatory and not using any assistive device and returned to work. (*Id*.)

4

On March 19, 2015, Defendant upheld the denial of the claim because it found that Plaintiff was capable of returning to her sedentary strength occupation on August 14, 2014. (*Id*. at PageID.110-14)

### *Standard of Review*

Generally, in an ERISA case, a court reviews a denial of benefits de novo "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S. Ct. 948, 956-57 (1989); *see also Perez v. Aetna Life Ins. Co*., 150 F.3d 550, 555 (6th Cir. 1998). The parties stipulated that the de novo standard of review applies in this case. (ECF No. 14 at Page ID.429.)

### *Discussion*

"To succeed in his claim for disability benefits under ERISA, Plaintiff must prove by a preponderance of the evidence that he was 'disabled,' as that term is defined in the Plan." *Javery v. Lucent Techs., Inc. Long Term Disability Plan for Mgmt. or LBA Employees*, 741 F.3d 686, 700 (6th Cir. 2014) (citing *Tracy v. Pharmacia & Upjohn Absence Payment Plan*, 195 Fed. Appx. 511, 516 n. 4 (6th Cir.2006)).

Plaintiff argues that "the termination of her benefits was premature as she was (once again) on restrictions and was off work as a result of the arthroscopy of her right knee." (ECF No. 15 at PageID.436.) Defendant argues that "Plaintiff has produced no medical evidence that at least as of February, 2015, if not fall 2014, she was unable to perform the essential functions of a secretary/receptionist job." (ECF No. 16 at PageID.453.)

The administrative record seems to indicate that Plaintiff underwent two periods of potential disability. The first began in March 2014, when Plaintiff fell and injured her left knee, and lasted until November 2014, when Dr. Woolever returned her to work. The second began

5

some time in December 2014 when Plaintiff complained of pain in her right knee, which was treated with arthroscopic surgery.

The only portion of the record that supports Plaintiff's claim for disability after August 13, 2014 is Dr. Woolever's notes from his meeting with Plaintiff that same day. The note demonstrates that her condition had improved, but concluded that "it would be about 3 months before she would be able to return" to work. (ECF No. 13-2 at PageID.258.) Dr. Woolever gave no explanation for this conclusion, and did not even indicate his understanding of Plaintiff's work duties and how they might be impacted by Plaintiff's condition. The February 2015 correspondence between Dr. Woolever and Dr. Reeder also undermines Plaintiff's claim, and Plaintiff produced no other evidence to support her claims at the administrative stage. Plaintiff has not met her burden of proving that she was unable to perform any of her material duties.

The record does not support Plaintiff's claims for long-term benefits for the period of disability related to her right knee and the following surgery. If Plaintiff were disabled, the terms of the policy indicate that she would have needed to make a second claim for short-term benefits after which she could apply for long-term benefits.

## *Conclusion*

For the foregoing reasons, Defendant's decision denying benefits will be AFFIRMED.

A separate order will enter.

Dated: March 31, 2017                    /s/ Gordon J. Quist
                                         GORDON J. QUIST
                                         UNITED STATES DISTRICT JUDGE